UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DEMETRIOUS STEWART,<br><br>　　　　　　　Plaintiff,<br>　v.<br>ROBERT LEGRAND, et al.,<br><br>　　　　　　　Defendants. | Case No. 3:13-cv-00210-RCJ-VPC<br><br>ORDER |

This counseled second-amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by state prisoner Demetrious Stewart is before the court for final disposition on the merits of the remaining grounds (ECF No. 18). Respondents have answered the petition (ECF No. 30), and Stewart replied (ECF No. 35).

**I.　Procedural History and Background**

On September 11, 2006, a jury convicted Stewart of 11 counts of sexual assault with a minor under fourteen years of age and 13 counts of lewdness with a child under fourteen years of age and acquitted him of three counts (exhibit 29 to first-amended petition).[1]

Petitioner was present at sentencing on December 4, 2006, and the State moved the district court to strike counts 2, 4, 6, 8, 11, 13, 15, 17, 19, and 21. Exh. 31. The court imposed the following sentence: counts 1, 3, 5, 7, 9, 10: life with the possibility of parole after twenty years, to run concurrently; counts 12, 14, 16: life with the possibility

---

[1] Exhibits 1-68 were filed with petitioner's first-amended petition (ECF No. 6) and may be found at ECF Nos. 7-10.

1

of parole after twenty years, to run concurrently with each other but consecutive to counts 1, 3, 5, 7, 9, 10; counts 18, and 20: life with the possibility of parole after twenty years, to run concurrently with each other but consecutive to counts 12, 14, 16; and counts 24-26 (the remaining lewdness counts): two to twenty years, to run concurrently with each other but consecutive to all other counts. *Id.* at 17-19. Judgment of conviction was filed on December 19, 2006. Exh. 32.

The Nevada Supreme Court affirmed Stewart's convictions on March 31, 2009. Exhs. 34, 41. The Nevada Supreme Court affirmed the denial of his counseled, state postconviction petition on November 15, 2012, and remittitur issued on February 1, 2013. Exhs. 63, 68.

Petitioner dispatched his federal habeas petition on March 19, 2013 (ECF No. 2). On March 3, 2014, petitioner filed a counseled, second amended petition (ECF No.18). On February 11, 2015, this court granted respondents' motion to dismiss, concluding that ground 3 was unexhausted and that ground 7 was procedurally barred (ECF No. 28). Stewart filed a counseled declaration of formal abandonment of ground 3 (ECF No. 29).

II. **Legal Standards**

    a. **AEDPA**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

3

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that,

4

but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance

5

of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

III.     **The Instant Petition**

**Ground 1**

Stewart alleges that the trial court violated his Sixth and Fourteenth Amendment rights when it unduly limited the defense's impeachment cross-examination of the State's principal witness against Stewart (ECF No. 18, pp. 10-12). Stewart sought to cross-examine the victim about a comment that she posted on her MySpace webpage. *Id.* at 11.

The Sixth Amendment Confrontation Clause guarantees the right of the accused in a criminal prosecution to be confronted with the witnesses against him. *See, e.g.*, *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). Nonetheless, trial courts retain

6

wide latitude with respect to the Confrontation Clause to impose reasonable limits on cross-examination based on concerns that include prejudice, confusion of the issues and relevance. *Van Arsdall,* 475 U.S. at 679. "The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). In *Van Arsdall*, the defense sought to impeach a State witness by asking about the fact that the State dismissed a criminal charge against him of being drunk on a highway after he agreed to speak with the prosecutor about the murder at issue in the trial. *Id.* at 676. The Supreme Court concurred that the trial court erred in prohibiting any cross-examination at all regarding the possibility that the witness would be biased as the result of the State's dismissal of his pending public drunkenness charge. *Id.* The Court explained: "By cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondents' rights secured by the Confrontation Clause." *Id.*

The Nevada Supreme Court denied this claim on direct appeal and stated:

> [Stewart] argues that C.T. presented herself at trial as a young girl uncomfortable with discussing sexual matters. But according to [Stewart], C.T. had previously used sexually explicit language while communicating on MySpace with her mother, Melanie. [Stewart] argues that the district court's denial of the MySpace evidence was error because the evidence was proper impeachment material, which the jury could have used in evaluating C.T.'s credibility. We disagree because the evidence does not suggest any knowledge of sexual conduct before the molesting started.
>
> "'Trial courts have considerable discretion in determining the relevance and admissibility of evidence. An appellate court should not disturb the trial court's ruling absent a clear abuse of that discretion.'" *Crowley v. State*, 120 Nev. 30, 34, 83 P.3d 282, 286 (2004) (quoting *Atkins v. State*, 112 Nev. 1122, 1127, 923 P.2d 1119, 1123 (1996), overruled on other grounds by *McConnell v. State*, 120 Nev. 1043, 1069, 102 P.3d 606, 624 (2004)). When determining whether evidence is relevant, the district court must consider NRS 48.015, which defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of

7

> consequence to the determination of the action more or less probable that it would be without the evidence."
>
> [Stewart] sought to introduce a statement made by C.T. on her MySpace webpage to Melanie. The statement said something regarding "bust[ing] her [Melanie's] comment cherry." The district court prohibited the evidence because it did not suggest "any prior knowledge of a sexual conduct, sexual discussions [sic]" and it was potentially impermissible character evidence. In addition, a party can only introduce specific-instance evidence on cross-examination, "subject to the general limitations upon relevant evidence." NRS 50.085(3) (emphasis added). Thus, a district court can properly prohibit evidence that is unrelated to the witness' trial demeanor. *See Sterling v. State*, 108 Nev. 391, 395, 834 P.2d 400, 402-03 (1992) (holding that the district court did not abuse its discretion when it found evidence of a victim's daily routine, which was offered to show that victim was fabricating the allegations, was irrelevant).
>
> We conclude that the district court did not abuse its discretion when it prohibited the statement. C.T. made the statement after the alleged acts occurred, and the sexual overtone in the statement does not rise to the same level of sexual content elicited in C.T.'s trial testimony. Further, C.T. made the statement to Melanie, a person she trusted, in a different context than discussing her own molestation in a public courtroom.

Exh. 41, at 3-4.

Stewart argues that, as in *Van Arsdall*, the trial court improperly prohibited him from questioning C.T. at all about her MySpace post and that the jury might reasonably have found that the post furnished C.T. with a motive for favoring the prosecution in her testimony (ECF No. 35). However, *Van Arsdall* is readily distinguishable. Clearly, as was the situation in *Van Arsdall*, a jury might reasonably find that a State's agreement with its witness to dismiss other criminal charges might give the witness a motive to favor the prosecution in his testimony. However, in this case, Stewart sought to introduce one MySpace posting by C.T. that invoked one phrase of sexual slang in order to cast doubt on C.T.'s sexual innocence and thus her credibility. The court notes that it was a single comment, C.T. posted the comment after the alleged acts had occurred, and—as the Nevada Supreme Court pointed out—the context is completely different than her testimony about her own molestation.[2]

---

[2] The court also notes that testimony was elicited from C.T. that reflected that she used some slang terms for sexual acts when she first went to the police, thus the defense was not entirely prevented from its

8

Stewart has failed to show that the Nevada Supreme Court's decision on federal ground 1 is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 1 is denied.

**Ground 2**

Stewart contends that the trial court committed plain error and violated his Sixth and Fourteenth Amendment rights when it allowed the State to engage in prosecutorial misconduct by appealing to the jury's sympathy during closing arguments (ECF No. 18, pp. 13-14).

In reviewing prosecutorial misconduct claims, the narrow issue the federal habeas court may consider is whether there was a violation of due process, not whether there was misconduct under the court's broad exercise of supervisorial power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). It is "not enough that the prosecutors' remarks were undesirable or even universally condemned[,] [t]he relevant question is whether the prosecutor's comments so 'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (quoting *Darden*, 477 U.S. at 181). The ultimate question before the court is not whether misconduct denied a fair trial, but whether the state court's resolution of the claim was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). *Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999).

The prosecutor's closing argument included the following:

> The defendant entered [C.T's] life when she was about 1 year old. Think of all the milestones that he participated in with her. It probably wasn't walking or just started walking when he came into her life. He was part of that. Her becoming toilet trained, playing with her, going to bed at night, the bedtime routine, the first day of school that C.T. would have had,

---

attempts to discredit C.T.'s sexual innocence and discomfort when testifying. *See, e.g.*, Exh. 22, pp. 56, 63

9

>  all of the - the birthdays, the many birthdays she had during those years, he was a part of that. The only real dad she ever had. Clearly, clearly coming in here and testifying was not easy for her. That trust was violated, not just the physical acts that were done to C.T. that are part of the reasons that these are crimes, but it's the violation of the trust that happened, and the fact that she is a 15-year-old because of what happened to her back when she was 12 and 13, because of those things, she's had to harden herself. Make no mistake, her mother is not without blame for not believing in her when she reached out and tried to reveal these things. As we now know, if mom perhaps had believed her and done some things, the abuse would have stopped far earlier. It would not have continued up until March of '05.
>
>  But keep all of that in mind as you assess the testimony of C.T. We have some jury instructions that you heard from the Judge. One of them addresses the credibility and believability of a witness and talks about the witness' demeanor on the stand, the consistency or inconsistencies in testimony, and those types of things, this jury instruction 16 touches upon that. Keep all of that in mind as you assess C.T.'s testimony.

Exh. 26, p. 43.

The Nevada Supreme Court denied the claim, stating:

>  The prosecutor, in her closing argument, repeatedly referred to the trust that [Stewart], as a father, violated. The prosecutor referenced various childhood milestones, such as walking, toilet training, bedtime routines, and school, to illustrate the severity of [Stewart's] violation of trust. According to [Stewart], the prosecutor's comments that [Stewart] violated his parental trust amounted to prosecutorial misconduct that deprived him of his Sixth and Fourteenth Amendment rights to an impartial jury. In addition, [Stewart] argues that the comments had nothing to do with the statutory elements of the crime because the references to the early childhood milestones preceded the alleged criminal conduct. [Stewart] did not object to the closing statements at trial. We conclude that [Stewart's] arguments lack merit because the statements went to an element of the crime of sexual assault with a minor under 14 years of age.
>
>  Generally, failure to object at trial bars appellate review of a trial issue. *McCullough v. State*, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983). If, however, the issue is a constitutional question, then his court has the discretion to review the issue for plain error. *Somee v. State*, 124 Nev. ___, ___, 187 P.3d 152, 159 (2008). Plain error review requires this court to consider whether an error clearly exists and, if so, whether it prejudiced the defendant's substantial rights. *Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005).

> If during closing argument, a prosecutor asserts his own personal opinion, urges the jury to convict a defendant on a basis other than the evidence, or appeals to the jurors' sympathies then the prosecutor has committed misconduct. *See Pantano v. State*, 122 Nev. 782, 793, 138 P.3d 477, 484 (2006). Prosecutorial misconduct is prejudicial when it "so infect[s] the proceedings with unfairness as to result in a denial of due process." *Anderson*, 121 Nev. at 516, 118 P.3d at 187. But a prosecutor's comments, standing alone, should not generally overturn a criminal conviction. *Id.*
>
> In the present case, the State charged [Stewart] with sexual assault with a minor under 14 years of age. NRS 200.366 provides in pertinent part: "A person who subjects another person to sexual penetration, . . . [and] the perpetrator knows or should know that the victim is mentally or physical incapable of resisting or understanding the nature of his conduct, is guilty of sexual assault." (Emphasis added). Based on the elements of the crime, the State argues that it was necessary to show how C.T.'s trust in her father made her mentally incapable of resisting his conduct. We agree and conclude that the State's argument was proper.

Exh. 41, pp. 5-7.

Stewart has not shown that this decision is contrary to or an unreasonable application of federal law. The prosecutor's comments about violating parent-child trust were properly directed to the issue of whether C.T. was mentally capable of resisting. It may be that a comment that C.T. has had to harden herself subsequent to the sexual assaults is fairly characterized as only an appeal to the jury's sympathy. However, the jury heard C.T. testify extensively and heard a conversation between C.T. and Stewart that C.T. had secretly recorded (*see, e.g.*, discussion of ground 5A, below). Stewart has not demonstrated that the prosecutor's comment during closing so infected the trial with unfairness as to make his conviction a denial of due process. As Stewart has failed to show that the Nevada Supreme Court's decision on federal ground 2 is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, ground 2 is denied. 28 U.S.C. § 2254(d).

11

**Ground 4**

Stewart argues that the trial court violated his Fifth, Sixth, Eighth and Fourteenth Amendment rights because it vindictively sentenced him and punished him for exercising his right to trial (ECF No. 18, pp. 15-17).

Penalizing defendants for the exercise of their constitutional rights is patently unconstitutional. *See e.g., U.S. v. Goodwin,* 457 U.S. 368, 372 (1982); *U.S. v. Jackson*, 390 U.S. 570, 581 (1968).

At sentencing, the trial judge made the following comments, among others:

> You, Mr. Stewart, you're very fortunate to have someone like Ms. Roundtree advocating on your behalf because during the course of the trial, she had a very difficult task. She had to cross-exam at least your two victims in this case and she did it with the respect and professionalism, but, you know what we put C.T. through as a kid by going to this trial, is something that I have to apologize to C.T. for because the justice system shouldn't put a kid through that. She had to sit up here in front of a room full of strangers and not only talk about subjects that are horrible frankly for us to talk about, let alone for us adults - we adults, to talk about in public, but we even - we understand the physical or intimate or sexual relationships. You know, C.T. didn't and she was victimized again over and over again and she - I think mom is correct. She is a shining example and a light to all who will have the benefit of being a part of her life.
>
> Mr. Stewart, you're not going to have that benefit. I don't think you deserve it in any way. The suggestion that somehow you had input into the young woman that she is today, maybe somebody who knows way more than me can find some legitimacy in that, but I believe that we teach by example and your example, regardless of any other things that you tried to do as a father, was hideous and thank goodness, despite their surroundings, despite their abuse, there are some people who are strong and they are survivors, but interesting, C.T. talked about the exact same thing that another mother of a victim talked about today, and I think the greatest lost (sic) is not one's virginity or sexual innocence - I mean that is horrible loss - but I think the greater lost (sic) is that lost (sic) of trust and the sense that there are people that you can give yourself to in this life to whom you will be safe, and your job as a dad, your job as a man, your job as an adult was to keep that child safe and instead you went right squarely down the wrong path and you not only victimized her - is it different because you victimized someone who loved you; someone who looked at you as a father; some who should have been teaching C.T. how to protect herself out in the world from young men who might try to take advantage

12

of her innocence or her sexuality, or her beauty, because she's a beautiful child. You didn't do that and I sat through this trial day after day listening to what we had to put her and her mom through, and it deserves serious sanction and that's what I'm going to do here today.

Exh. 31, pp. 14-15.

The Nevada Supreme Court denied the claim, explaining:

> [Stewart] argues that the district court engaged in vindictive sentencing because he exercised his right to a jury trial. According to [Stewart], the district court judge was angry about the repeated victimizing of C.T. Further, [Stewart] argues that the district court considered Melanie a victim because of [Stewart's] alleged sexual assault against her. We disagree because the district court's sentences were within the statutory guidelines and supported by evidence.
>
> "It is well established that a sentencing court may not punish a defendant for exercising his constitutional rights . . . ." *Mitchell v. State*, 114 Nev. 1417, 1428, 971 P.2d 813, 820 (1998) overruled on other grounds by *Sharma v. State*, 118 Nev. 648, 655, 56 P.3d 868, 872 (2002) and *Rosky v. State*, 121 Nev. 184, 191 & n.10, 111 P.3d 690, 694 & n.10 (2005). But the defendant must prove "that the district court sentenced him vindictively." *Id*. In addition, this court has consistently afforded the district court wide discretion in its sentencing decision. *See, e.g., Houk v. State*, 103 Nev. 659, 664, 747 P.2d 1376, 1379 (1987). This court will refrain from interfering with the sentence imposed "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence." *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976). Moreover, regardless of its severity, a sentence that is within the statutory limits is not "'cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience.'" *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996).
>
> Here, the jury convicted [Stewart] of 11 counts of sexual assault with a minor under 14 years of age and 3 counts of lewdness with a minor under 14 years of age. All of the district court's sentences—lifetime sentences for each sexual assault conviction and twenty year sentences for each lewdness conviction—were within the statutory sentencing guidelines. In addition, the district court relied upon C.T.'s and Melanie's statements, both of which discussed the impact the molestation had on their lives. Finally, it appears that the district court's reference to Melanie as a victim was in the context of her child's molestation, as opposed to the alleged sexual assault on Melanie. Thus, we conclude that the district court's sentences were not vindictive, and therefore the district court did not violate [Stewart's] constitutional rights.

13

Exh. 41, pp. 8-9.

Respondents point out that NRS 200.366(3) required the sentence that the district court imposed for sexual assault of a minor under age fourteen at the time the crimes were committed (ECF No. 30, p. 17). They also note that the trial court imposed the lesser of two possible sentences, pursuant to state law, for the convictions for lewdness with a minor under age fourteen, and that the court also explained the basis for its decision to impose consecutive sentences. *Id.* at 18. Stewart argues that the state district court should have run all sentences concurrently or at least run all sexual assault counts concurrently (ECF No. 35, pp. 18-19).

Stewart has failed to demonstrate that the state supreme court decision was an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented at trial. The sentences imposed were all within the statutory sentencing guidelines. The trial judge explained at some length the reasoning involved in her decision to impose consecutive sentences on certain counts. Exh. 31, p. 15. Taken as a whole, the sentencing transcript reflects that the court was lamenting a justice system in which the child had to present such explicit testimony and apologized to the victim "on behalf of the system." *Id.* at 16-17.

Because Stewart has not met his burden to show that the Nevada Supreme Court's decision on federal ground 4 is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, federal ground 4 is denied. 28 U.S.C. § 2254(d).

**Ground 5A**

Stewart contends that his trial counsel rendered ineffective assistance in violation of his Sixth Amendment rights when counsel failed to request a jury instruction on mutual consent (ECF No. 18, pp. 18-19).

To obtain relief based on an error in instructing the jury, a habeas petitioner must show the "'instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Where the defect is the failure to give an instruction, the inquiry is the same, but the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155-157 (1977); *see also Estelle*, 502 U.S. at 72.

The Nevada Supreme Court affirmed the denial of the claim, finding:

> [A]ppellant argues that his trial counsel was ineffective for failing to propose a jury instruction defining consent and failing to argue that the jury instructions failed to properly define consent. Appellant argues that, had the jury been properly instructed, they would have concluded that the victim actually consented to the sexual contact because the victim bargained with appellant regarding types and occurrence of sexual acts. Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced.
>
> "Submission is not the equivalent of consent." *McNair v. State*, 108 Nev. 53, 57, 825 P.2d 571, 574 (1992) (citing Tryon v. State, 567 P.2d 290, 293 (Wyo. 1977)). Moreover, "[a] rape victim is not required to do more than her age, strength, and the surrounding facts and attending circumstances would reasonably dictate as a manifestation of her opposition." *Id.* (citing *Dinkens v. State*, 92 Nev. 74, 78, 546 P.2d 228, 230 (1976)); *see also Shannon v. State*, 105 Nev. 782, 790, 783 P.2d 942, 947 (1989) (discussing that factors such as the victim's age, maturity level, the influence of the defendant over the victim, and the victim's act of feigning sleep evidenced that the sexual acts occurred against the victim's will).
>
> While the victim in this case stated that appellant reached an agreement with her to not perform certain sexual acts and to limit the sexual encounters to three times per week, the victim also testified that

> there was nothing she could do to stop appellant from performing at least some sexual acts on her, that on at least one occasion appellant initiated a sexual act while she was still asleep, and that appellant picked her bedroom door lock after she locked the door in an effort to stop him from performing sexual acts on her.  Testimony also demonstrated that appellant was the victim's step-father, appellant had acted as the victim's parent since the victim was a one-year-old, and the victim was between the ages of 12 to 14 years during the occurrence of the numerous sexual acts.
>
> There was substantial evidence that the sexual acts occurred against the victim's will or under conditions in which appellant knew or should have known that the victim was mentally or physical incapable of resisting. *See Shannon*, 105 Nev. at 790, 783 P.2d at 947 (citing NRS 200.366).  Appellant fails to demonstrate that reasonably competent counsel would have argued for further instructions regarding consent under the circumstances of this case.  Moreover, as there was substantial evidence that the victim did not consent, appellant fails to demonstrate a reasonable probability that the outcome of the trial would have been different had counsel sought additional instructions regarding consent.  Therefore the district court did not err in denying this claim. FN1
>
> FN1 Appellant further argues in his reply brief that the victim consented as evidenced by the fact that appellant did not use physical force or the threat of physical force in conjunction with the sexual acts, and therefore, appellant did not commit sexual assault.  Appellant's argument is without merit as physical force or the threat of physical force is not necessary for a crime of sexual assault.  *See Shannon*, 105 Nev. at 790, 783 P.2d at 947.

Exh. 63, at 3-4.

The jury was instructed that it should find Stewart not guilty of sexual assault if it found that he "had a reasonable but mistaken belief that the alleged victims consented to the sexual penetration."  Exh. 27, p. 14.  In fact, there were several instructions given to the jury that involved the definition of consent, including the instructions defining sexual assault, reasonable but mistaken belief of consent, and statutory sexual seduction.  *See, e.g., id*. at 13-18, jury instruction nos. 5, 5a, 6, 7, 7b.

C.T. testified as follows:  that Stewart sexually assaulted her while she was asleep, and she woke up "mad and screaming;" that she believed that if she told anyone they would think she was insane and send her to a "crazy house;" that she tried locking her bedroom door but Stewart picked the lock; that she could not stop the abuse so she

16

negotiated a limit of about three times per week; and that she put music on to distract herself from the abuse. Exh. 22, pp. 24-40. C.T. also testified that her mother did not believe her until C.T. secretly tape recorded a conversation between C.T. and Stewart about the abuse. *Id.* at 38-40.

Stewart alleges that the jury should have been instructed to "look to C.T.'s actions and control as a means to demonstrate consent as oppose[d] to C.T.'s personal thoughts" (ECF No. 35, p. 22). Stewart has failed to show that counsel was deficient or that there was a reasonable probability of a different outcome if counsel had requested another jury instruction. The court also notes that a review of the jury instructions indicates that they encompass the notion of considering actions and control when evaluating consent. *See* Exh. 26. Stewart has failed to meet his burden to demonstrate that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 5A.

**Ground 5B**

Stewart asserts that trial counsel was ineffective for failing to object to jury instructions regarding a defendant's reasonable but mistaken belief of consent and that he suffered prejudice because the burden of proof was shifted to him and he was forced to testify (ECF No. 18, p. 19). Stewart argues that the "reasonable but mistaken belief" instruction, "with no further guidance to the jury, could reasonably lead a jury into believing that Stewart had to take the stand to provide evidence of his state of mind" (ECF No. 35, p. 25).

The Nevada Supreme Court affirmed the denial of this claim on the basis that Stewart failed to demonstrate that his trial counsel's performance was deficient or that he suffered prejudice, noting that "[t]he instruction properly informed the jury that they

17

should find appellant not guilty if they concluded he had a reasonable but mistaken belief that the victim consented to the sexual acts." Exh. 63, pp. 4-5.

The state supreme court continued:

> In addition, considering testimony that the appellant initiated at least one sexual act while the victim was sleeping, that the victim's attempt to stop the sexual acts by locking her bedroom door was thwarted by appellant's use of a hanger to pick the lock, the age of the victim during the incidents, and appellant's own recorded statements concerning the sexual encounters with the victim, appellant fails to demonstrate a reasonable probability of a different outcome at trial had trial counsel objected to the challenged instruction. Therefore the district court did not err in denying this claim.

*Id*. at 5.

Stewart has not demonstrated that an objection had any likelihood of success. He has failed to demonstrate that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 5B.

**Ground 6**

Finally, Stewart claims his appellate counsel was ineffective for failing to argue that the jury instructions did not properly define consent and improperly shifted the burden of proof to Stewart (ECF No. 18, p. 20).

The United States Supreme Court has held that appellate counsel need not raise every nonfrivolous claim, but should select from among them in order to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In *Smith v. Robbins*, the Court further explained that it is possible to bring a *Strickland* claim based on appellate counsel's failure to raise a certain claim, but that it is difficult to demonstrate that counsel was incompetent. 528 U.S. 259, 288 (2000). A petitioner bears the burden of showing that a particular nonfrivolous issue was clearly stronger than the issues that counsel presented. *Id.*

In affirming the denial of this claim, the Nevada Supreme Court determined that, as with the claim that trial counsel was ineffective for failing to object to the jury instruction regarding consent, Stewart failed to demonstrate appellate counsel was deficient or that this issue had a reasonable probability of success on appeal. Exh. 63, p. 6.

Stewart has not shown that appellate counsel was deficient for failing to raise the claim that trial counsel was ineffective for failing to challenge a jury instruction that was a correct statement of the law. He has not demonstrated that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 6.

Accordingly, the petition is denied in its entirety.

**IV.   Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Stewarts petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Stewart's claims.

**V.     Conclusion**

**IT IS THEREFORE ORDERED** that the second-amended petition (ECF No. 18) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

Dated: This 12th day of December, 2016.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE